IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TODD BAKER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:20-cv-00465 JUDGE RICHARDSON |
| ABC EMPLOYMENT HOLDINGS, LLC D/B/A MS COMPANIES LLC, | ) ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's motion for summary judgment,[1] which is accompanied by a supporting memorandum. (Doc. Nos. 25 ("Motion"), 26). Plaintiff filed a response (Doc. No. 30), and Defendant filed a reply (Doc. No. 32). For the reasons stated herein, Defendant's Motion will be granted.

### BACKGROUND[2]

At relevant times, Plaintiff was the Vice President of Quality Operations for Defendant. (Doc. No. 31 at 1). Prior to Plaintiff's acceptance of the position, Defendant presented Plaintiff with an Offer Letter ("Letter") for the position in June 2018. (*Id.*). Plaintiff signed the letter on June 19, 2018. (Doc. No. 27-1).

---

[1] Plaintiff named ABC Employment Holdings, LLC and MS Companies as Defendants in the complaint. (Doc. No. 1-1). The parties, however, appear not to dispute that ABC Employment Holdings, LLC is doing business as MS Companies, and therefore there is in fact only one Defendant in this action—ABC Employment Holdings, LLC. (Doc. Nos. 25 at 1, 30 at 1). Therefore, the Court treats ABC Employment Holdings, LLC and MS Companies (which as just indicated is merely a trade name for ABC Employment Holdings, LLC) as a single Defendant for the purposes of summary judgment.

[2] Most of the facts contained in this section are taken from the parties' respective responses (Doc. Nos. 31, 33) to the other side's statement of asserted facts—responses that identify for the Court facts that are not in genuine dispute. Unless indicated otherwise, the facts contained in this section are undisputed.

Plaintiff's Offer Letter provided for a base compensation of $135,000 per year and advised Plaintiff on certain bonuses available to him during his employment. (Doc. No. 31 at 2). The Letter began with "[i]t is with great pleasure that I confirm our offer to you to join MS Companies, LLC ("MS Companies" or "the Company") as a member of our team." (Doc. No. 27-1 at 37). The Letter stated that Plaintiff will be "eligible to receive the incentive plan" based on his performance.[3] (*Id.*). The "incentive plan" presumably refers to Plaintiff's eligibility to be paid a bonus calculated as a certain percentage of his salary, conditioned on the 6-month EBITDA (earnings before interest, tax, depreciation, and amortization) reaching certain percentage thresholds (hereinafter, the "Letter-bonus").[4] (*Id.*). Specifically, the Letter states that the "Bonus Structure based on EBITDA (6 month avg)" is as follows:

- 15%–17% EBITDA — 20% of Salary
- 18%–20% EBITDA — 30% of Salary
- 20% and above EBITDA — 40% of Salary
- Bonus payout in February and August

---

[3] The Court notes that according to standard dictionaries, the ordinary meaning of "eligible" is *qualified* for something. *See, e.g.,* Miriam-Webster, "Eligible" (https://www.merriam-webster.com/dictionary/eligible#:~:text=%3A%20a%20person%20or%20thing%20that,that%20is%20eligible%20for%20something) (last visited May 23, 2023). Under this definition, "eligible" does not necessarily mean entitled, and as used in a particular document "eligible" likewise may not mean "entitled." *See Vest v. Nissan Supplemental Exec. Ret. Plan II*, No. 3:19-CV-01021, 2022 WL 3973910, at *8 (M.D. Tenn. Aug. 29, 2022) (rejecting the notion that as used in a particular ERIA plan, "eligible" means "entitled"). Despite the Letter's use of the term "eligible," the parties implicitly suggest that if the prescribed EBITDA thresholds set out in the Letter are met, that Plaintiff is *entitled* to a bonus rather than merely eligible. It is conceivable that the use of the word "eligible' in the Letter undercuts Plaintiff's claim that Defendant breached its duty to him at all, given that the actual language of the Letter as a whole likely does not create an *entitlement* to the bonus described therein. The parties, however, do not raise this question or issue, and therefore, the Court accepts for summary judgment purposes that "eligible," as used in the Letter, meant "entitled."

[4] Neither party explains the meaning of the term "15%–17% EBITDA" as contained in the Letter and used throughout the filings by the parties. EBITDA is a value that is expressed by an absolute number, not by a percentage. The Court assumes that when the parties refer to a percentage in connection with EBITDA, the parties mean to convey the margin between EBITDA and the relevant revenue. The intended meaning of "15%–17% EBIDTA" in this sense, however, is not material to the Court's analysis. Even if the parties had a different intended meaning, it would change neither the Court's approach to the issues raised in this litigation, nor the outcome of the Motion.

(*Id.*). Defendant calculated the six-month EBITDA averages based on performance from January through June and July through December each year. (Doc. No. 31 at 3). Defendant required that its employees be employed during the entirety of any six-month period in order to be eligible for a Letter-bonus for that period. (*Id.*). Defendant contends that Plaintiff's employment at Defendant began on August 1, 2018, whereas Plaintiff asserts that his employment began (as indicated by his "start date") on July 9, 2018. (*Id.* at 3–4).

In his role as VP of Quality Operations, Plaintiff's job duties included overseeing operations for the Inspection and Containment ("I/C") Department in Defendant's Northern Region and managing employees in the field who performed quality inspections. (*Id.*). The "I/C" Department was also referred to as the "Quality" division or department. (*Id.*; Doc. No. 26 at 1).

On or about March 1, 2019, Defendant paid a bonus to Plaintiff of $27,000. (Doc. No. 33 at 16). The parties dispute how this bonus was calculated. (*Id.* at 15). Plaintiff contends that the $27,000 bonus was based on the I/C Department's EBITDA reaching the necessary threshold as set forth in the Letter, whereas Defendant asserts that the bonus was not based on EBITDA and was instead solely discretionary. (Doc. Nos. 30 at 8–9, 26 at 9).

In 2020, Plaintiff transferred from his role of VP of Quality Operations to Data Analyst Leader for Defendant. (Doc. No. 31 at 4–5). Plaintiff terminated his employment in or about April 2020. (*Id.* at 7).

Plaintiff filed this action in the Chancery Court for Williamson County, Tennessee. (Doc. No. 1-1). First, Plaintiff claims that the $27,000 bonus that he received in March 2019 was insufficient. (*Id.* at 6–7). Plaintiff claims that the bonus was calculated based on the bonus schedule in the Letter for the range of 15%–17% EBITDA, when it in fact should have been calculated based on the bonus-schedule range of 18%–20% EBITDA. (*Id.* at 7). Second, Plaintiff alleges that

he was improperly not paid any bonus for the two six-month periods in 2019 despite the relevant EBITDA thresholding being met. (*Id.*). Based on Defendant allegedly short-changing him on his bonus received in March 2019 and failing to pay him any bonus for the two six-month periods in 2019, Plaintiff alleges that he has been damaged in the amount of $102,600.

The complaint contains three counts: Count I (Breach of Contract); Count II (Breach of Implied Contract); and Count III (Promissory Estoppel). (*Id.* at 9–11). On June 6, 2020, Defendant removed the action to this Court on the basis of diversity jurisdiction. (Doc. No. 1).

On July 1, 2022, Defendant filed the Motion (Doc. No. 25), in which it requests that summary judgment be granted in its favor on all claims. (Doc. No. 25). Plaintiff filed a response in opposition (Doc. No. 30), and Defendant filed a reply (Doc. No. 32). The Motion is therefore now ripe for resolution.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by*

*Young v. United Parcel Serv.*, 575 U.S. 206 (2015). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[5] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii)

---

[5] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at *5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## DISCUSSION

There are two primary disagreements between the parties in this litigation. The first is over whether "EBITDA" as contained in the Letter refers to the EBITDA of the I/C Department (in

which Plaintiff worked) in particular or the EBITDA of Defendant in its entirety. Plaintiff contends that "EBITDA" as contained in the Letter refers to the EBITDA only of the I/C Department, and therefore whether he was eligible for the Letter-bonus and what size bonus he was eligible for depended on the I/C Department's EBITDA. (Doc. No. 30 at 14). Defendant, on the other hand, contends that "EBITDA" as contained in the Letter refers to the EBITDA of Defendant as whole. (Doc. No. 26 at 3). Therefore, according to Defendant, Plaintiff was eligible for a bonus only if Defendant's EBITDA reached 15%. (*Id.*).

Assuming arguendo that "EBITDA" as contained in the Letter refers to the EBITDA only of the I/C Department, rather than Defendant in its entirety, the parties further dispute whether the I/C Department ever reached 15% EBITDA during the relevant portions of Plaintiff's employment. Defendant considers the two six-month periods in 2019 to be the only time periods relevant to determining whether Plaintiff was eligible for the Letter-bonus because Plaintiff was employed only for part of the second six-month period of 2018. (Doc. No. 26 at 14). Defendant further contends that the record is devoid of evidence establishing that the I/C Department had an EBITDA of at least 15% during 2019, as would be necessary to have made Plaintiff eligible for the Letter-bonus. (*Id.*).

As discussed in detail below, the Court agrees with Defendant that even assuming that "EBITDA" refers to the EBITDA of the I/C Department, there is no genuine dispute of material fact that Plaintiff was not eligible for the Letter-bonus based on the I/C Department's EBITDA for the second six-month period of 2018. The Court also agrees with Defendant that the record reflects an absence of a genuine dispute of material fact that the I/C Department did not reach the 15% threshold during the relevant time period (the two six-month periods in 2019) required for Plaintiff, by the terms of the Letter, have received the Letter-bonus.

Because the Court finds that the record reflects no genuine dispute of material fact that Plaintiff was not eligible for the Letter-bonus based on the terms of the Letter even when treating "EBITDA" as contained in the letter as meaning the EBITDA of the I/C Department in particular, the Court need not resolve the question of whether "EBITDA" in fact refers to the EBITDA of the I/C Department or the EBITDA of Defendant.

1. **Defendant has met its burden of showing an absence of a genuine dispute of material fact that Plaintiff was not eligible for a Letter-bonus for the second six-month period of 2018.**

The parties agree that Defendant required its employees to be employed during the entirety of any six-month period in order to be eligible for the Letter-bonus. (Doc. No. 31 at 3). Plaintiff also admitted that he was aware of this policy before he signed the Letter. (Doc. No. 27-1 at 9 ("Plaintiff's Dep.")). The parties dispute Plaintiff's exact start date but they agree that Plaintiff started at some point after July 1, 2018 (the beginning of the second six-month window used to calculate the relevant EBITDA for Plaintiff's bonus). Therefore, the parties agree that Plaintiff was not employed for the entire six-month period of July–December of 2018. Based on the Letter, and the mutual understanding of the parties, the fact that Plaintiff was not employed during the entire six-month period would make him ineligible for a bonus based on EBITDA reached in 2018 *even if* the I/C Department EBITDA reached the necessary 15% threshold.

Plaintiff, however, asserts that whether he was employed for the entire six-month period is immaterial to the question of whether he was eligible for the Letter-bonus in 2018 because he nonetheless received a $27,000 bonus, based (according to Plaintiff) on the I/C Department's 2018 EBITDA, in March 2019. In other words, Plaintiff argues that he *did* receive a bonus (albeit one

that Plaintiff says was too small)[6] based on the I/C Department's 2018 EBITDA, thus (according to Plaintiff) obviously reflecting that he was indeed eligible for such a bonus irrespective of whether he was employed for the entire six-month period.

As Defendant points out, however, Nicholas Vandergrift (the Chief Financial Officer of Defendant) testified in his Rule 30(b)(6) deposition[7] that the $27,000 bonus was based on the company having a "good year," Plaintiff being a "good employee," and that "[l]ike all other bonuses that are paid it was recommended. The CEO [Chief Executive Officer] subjectively decides. . . ." (Doc. No. 27-2 at 6). Defendant has therefore provided evidence showing that the $27,000 bonus was *not* the bonus based on EBITDA provided in the Letter. Again, consistent with Defendant's policy that employees are not eligible for the Letter-bonus if they have not been employed for the entire relevant six-month period, Vandergrift's deposition indicates that the $27,000 bonus was calculated and provided based on alternative metrics.

In response, Plaintiff points to the declaration of David Kmita, an employee of Defendant,[8] and a PowerPoint presentation that contains information about bonuses. According to Plaintiff, Kmita's declaration reflects that Plaintiff received a bonus of $27,000 (which Plaintiff contends was insufficient) in March 2019 based specifically on the EBITDA of the I/C Department. (Doc. No. 30 at 11 (citing Doc. No. 30-2 (Kmita Decl.))). Plaintiff's characterization of the declaration, however, is not supported by—even if it is not inconsistent—with the language of the declaration.

---

[6] Plaintiff alleges that $27,000 was less than the full amount of the Letter-bonus that (according to him) he should have received.

[7] A Rule 30(b)(6) deposition is a deposition of an organization given by a representative of the organization who is designated by the organization to testify on behalf of the organization. Fed. R. Civ. P. 30(b)(6). Such testimony is generally treated as testimony of the organization rather than as testimony of the representative in his or her personal capacity.

[8] Curiously, Kmita's declaration does not state what his position was at Defendant, and the parties do not elsewhere so state.

With respect to Plaintiff's bonus of $27,000, Kmita's declaration states that "at the end of 2018, [Kmita] was asked to prepare a presentation showing the bonus and incentive pay for all [of his] employees." (Doc. No. 30-2 at 3). The declaration further reflects that Kmita then met with Pete Butler (Chief Executive Officer of Defendant) and Jason Beaubien (Chief Operating Officer of Defendant) on February 22, 2019. It then states: "During that meeting, we shared the Presentation with Butler and Beaubien and discussed the details of the bonus and incentive pay included in that Presentation, including my notation that Baker had met the EBITDA threshold for his bonus." (*Id.* at 3).

The declaration plainly does not directly establish that the $27,000 bonus received by Plaintiff in March 2019 was based on the meeting of the threshold associated with the Letter-bonus, nor could a reasonable inference be drawn to reach such a conclusion. At most, the declaration suggests that achieving "the EBITDA threshold" was *a factor* in the decision (which appears to have been made by Butler, not Kmita) to give Plaintiff a bonus of $27,000. (Doc. No. 30-2 at 3). In other words, that the bonus was paid not because Plaintiff was *entitled* to it by virtue of (supposedly) being "eligible" for it under the Letter, but rather because Butler made a discretionary decision to award it based on a variety of factors, including (but by no means necessarily limited to) "the EBITDA threshold."

Even assuming (contrary to the Court's conclusion immediately above) that the $27,000 was based exclusively on satisfaction of *an* EBITDA threshold, this does not necessarily mean that Plaintiff was eligible for the *Letter-bonus* based on satisfaction of *whatever EBITDA threshold is referred to in the letter*. The Letter makes Plaintiff "eligible" for a bonus of 20% of his salary if 15%–17% EBITDA is achieved. (Doc. No. 27-1 at 37). That Plaintiff received a $27,000 bonus in March 2019 that was purportedly based on the I/C Department's EBITDA does not mean that

Plaintiff was eligible for the Letter-bonus in particular. As mentioned, Plaintiff was not eligible for the Letter-bonus because he was not employed for the entire relevant six-month period. (Doc. No. 27-1 at 9).

Therefore, the Court finds unavailing Plaintiff's reliance on Kmita's declaration to support the proposition that the $27,000 he received was based on his being eligible specifically for the Letter-bonus based on the satisfaction of the *particular* EBITA threshold mentioned in the Letter. As noted above, the declaration does not directly support the proposition, and the Court concludes that a reasonable jury could not infer it from Kmita's declaration that the proposition is true.

Plaintiff next relies on a presentation that includes a slide describing the $27,000 bonus. (Doc. No. 30 at 9 (citing Doc. No. 30-1 at 25)). The slide states "IC EBITDA Performance" and proceeds to list the following characteristics: "Paid twice per year (January and August)," "Paid in Aug based on Jan–Jun performance," "Paid in Jan based on Jul–Dec performance." (Doc. No. 30-1 at 25). The slide also contains a table listing "EBITDA Performance" in one column and "Bonus Incentive" in the second column. (*Id.*). In the first row, under EBITDA Performance, the table lists "15% Min EBITDA," and in the first row of the second column, under "Bonus Incentive," the table states "20% of Salary." (*Id.*). Next to the first row of the table is "$135K X 20% = $27,000." (*Id.*). A yellow box underneath the table states "Assuming Year End MS Financials come in between 15%–18% EBITDA." (*Id.*).

The slide does not indicate that the $27,000 was based on the I/C Department's EBITDA. True, the slide states, "IC EBITDA Performance" and proceeds to list when the bonuses are paid. However, the slide plainly indicates that the bonus is subject to the year-end financials of Defendant *as a* whole, and not just of Defendant's *I/C Department*, meeting the 15% EBITDA threshold. Therefore, the slide does not support Plaintiff's argument that the $27,000 he received

was paid (albeit in an insufficient amount) as the Letter-bonus—rather than some other kind of bonus—because Plaintiff himself contends that the Letter-bonus by definition is a bonus based on the I/C Department's EBITDA.

Based on the evidence put forth by Defendant (*i.e.* Vandergrift's deposition) to meet its initial burden, and the insufficiency of the evidence put forth by Plaintiff (*i.e.* Kmita's declaration and the PowerPoint presentation) to meet his resulting burden, the Court finds that there is no genuine dispute that Plaintiff was not eligible for Letter-bonus for the second six-month period of 2018.

2. **Defendant has met its burden of showing an absence of a genuine dispute of material fact that the I/C Department did not reach the 15% EBITDA threshold during either of the two six-month periods of 2019 as required to make Plaintiff eligible for the Letter-bonus.**

In order for Plaintiff to be successful on his claims, the I/C Department's EBITDA must have reached a minimum of 15% EBITDA during the relevant portion of Plaintiff's employment. (Doc. No. 27-1 at 37). As the summary judgment movant, Defendant has the initial burden of identifying portions of the record that demonstrate the absence of genuine dispute of material facts. *See Johnson*, 13 F.4th at 502. Having determined that Plaintiff was not eligible for a Letter-bonus for the second six-month period of 2018, the Court now turns to whether Plaintiff was eligible for the Letter-bonus for the two six-month periods of 2019.

Defendant, implicitly assuming arguendo that EBITDA in the Letter refers to the I/C Department's EBITDA only, argues that there is no genuine dispute that the I/C Department did not reach 15% EBITDA during either of these periods as required to make Plaintiff eligible for the Letter-bonus. (Doc. Nos. 26 at 14, 32 at 2–4).[9] Seeking to satisfy its initial burden as the summary-

---

[9] This fact indeed would be "material" because, as Defendant suggests, it would mean that Plaintiff's claim for the Letter-bonus for either period in 2019 would fail due to his ineligibility for such a bonus.

judgment movant, Defendant points to a portion of Plaintiff's deposition in which Plaintiff and counsel for Defendant ("counsel") discussed Plaintiff's allegation in the complaint that EBITDA for the purposes of the Letter-bonus had reached at least 18% during both the six-month periods of 2019. (Doc. No. 27-1 at 23).[10] Counsel asked Plaintiff where he got the 18% figure from, to which Plaintiff replied: "So this is stemming from a presentation prep meeting that I was a part of. . . I saw a Quality EBITDA results page stating 2018 and 2019 were both 18 percent. It wasn't exactly 18 percent. I can't remember the decimal. But they were both over 19." (Doc. No. 27-1 at 23–24). After some back and forth between counsel and Plaintiff, counsel asked Plaintiff "and so you are basing [the allegation in the complaint regarding the 18%] on this. . . presentation prep session that you were a part of?" (*Id.* at 24–25). Plaintiff then replied, "[y]es." (*Id.*). Defendant also points out that as part of this conversion in the deposition, Plaintiff stated that he did not know whether the figures were "final-reported EBITDA or projections or add-back EBITDA," and instead that he "just assumed that they were final since they were being presented in the fashion that they were." (*Id.* at 25). Plaintiff, however, agrees that that he never attended any investor or private equity presentations, "but was just in the room for a single preparation session for one of those presentations." (Doc. No. 31 at 11).

      Defendant has met its initial burden of demonstrating an absence of a genuine dispute of material fact as to whether the EBITDA figure relevant for determining eligibility for the Letter-bonus actually reached the 15 percent threshold as required for such eligibility. That is, Defendant has pointed to information suggesting *both* that Plaintiff has only one basis for determining that the relevant EBITDA hit 15 percent as required for the Letter-bonus *and* that such basis is too

---

[10] Defendant's brief (Doc. No. 26 at 14–15) cites its statement of undisputed material facts (Doc. No. 27), which in turn cites to the relevant portion of Plaintiff's deposition.

speculative for a jury to make this determination. That sole basis is Plaintiff's testimony as to what Plaintiff recalls regarding EBITDA figures that (according to Plaintiff himself) may have been merely projected (as opposed to final and actual)[11] and clearly were not necessarily the particular relevant EBITDA metrics for determining whether Plaintiff was eligible for the Letter-bonus.[12] Therefore, Plaintiff's testimony at most reflects that he may have seen EBITDA figures for the I/C Department that were approximately 18%, but the figures may be mere projections and may have been for "adjusted" EBITDA (which Plaintiff does not contend are relevant). This testimony amounts to nothing more than fodder for rank speculation that the *final*, *particular* relevant EBITDA figures were at least 18% (or, for that matter, 15 percent, the figure required for the smallest-sized Letter-bonus). Furthermore, when asked clearly by counsel whether he was basing his allegation regarding the 18% on the presentation prep meeting, Plaintiff unequivocally

---

[11] As noted, Plaintiff admitted in his deposition that he did not know whether the figures he claims to have seen were final rather than projections, and that he did not attend the presentation in which the final figures were presumably presented.

[12] Instead, Plaintiff asserts that "EBITDA" in the Letter refers to the "financial results of the Quality Division (also known as the 'I/C department),'" but he does not specify further. (Doc. No. 30 at 1–2).

In so far as Plaintiff contends that "final" EBITDA figures fall outside the meaning of "EBITDA" in the Letter, he only does so with respect to the "final" EBITDA of Defendant as a whole. (Doc. No. 30 at 18). In other words, Plaintiff argues that the "final" EBITDA of Defendant is not the relevant metric but does not contend the same for the final EBITDA of the I/C Department. It follows that that Plaintiff's filings do not reflect that the projected EBITDA of the I/C Department would be the relevant metric for determining whether he was eligible for the Letter-bonus.

As for "adjusted EBITDA," Vandergrift explained in his deposition that "adjusted EBITDA" represents the "best case scenario. . . if the company had operated at a hundred percent efficiency. This isn't real EBITDA." (Doc. No. 27-2 at 15). Plaintiff agreed that adjusted EBITDA is not the final EBITDA, testifying that he understood "adjusted" EBITDA to be "the numbers that are *different* that they bring in *after* they complete their final audits is what I assume." (Doc. No. 27-1 at 31) (emphasis added). When asked if he knew why "adjusted" EBITDA would be useful to a company, Plaintiff answered that he was not "part of those communications. . . ." (*Id.*).

Therefore, Plaintiff does not contend, and his deposition testimony does not otherwise reflect, that "EBITDA" in the Letter refers to the projected EBITDA of the I/C Department or any "adjusted" EBITDA (whether of Defendant as a whole or of the I/C Department).

answered "yes." Therefore, Defendant has made a preliminary showing Plaintiff did not have additional bases (or evidence) by which to support this allegation. The Court therefore finds Defendant to have met its initial burden that the record does not reflect a genuine dispute of material fact that the I/C Department did not reach 15% EBITDA during 2019.

In an attempt to rebut Defendant's initial showing, Plaintiff points to an investor presentation[13] from which he argues that a reasonable jury could infer that the I/C Department met the 15% threshold in 2019. (Doc. No. 30 at 16 (citing Doc. No. 30-4 at 37)). Plaintiff argues that presentation reflects that "Quality Division Revenue was going up from 2017 through 2019 and that back office 'headcount' was going down." (*Id.* at 16 (citing Doc. No. 30-4 at 20)). However, even if the I/C Department's revenue in 2019 had been increasing, this is not a sufficient basis on which to draw the inference that the I/C Department's EBITDA was also growing or reached 15%.

Plaintiff further contends that the presentation reflects that the "adjusted EBITDA for the company as a whole was increasing" from 2017 to 2019, and from this a jury could infer that the EBITDA of the I/C Department reached 15%. (Doc. No. 30 at 16 (citing Doc. No. 30-4 at 37)). Plaintiff does not contend, let alone present evidence to indicate, that "adjusted" EBITDA was the proper metric for whether Plaintiff was eligible for the Letter-bonus. But even if "adjusted" EBITDA were the proper metric, it is not reasonable to infer, from a supposed (unspecified) increase in "adjusted" EBITDA as whole, that "adjusted" EBITDA of the I/C Department in particular was at or above 15% in 2019. A company as a whole could have an increasing "adjusted" EBITDA while a particular department has a declining "adjusted" EBITDA. Simply put, it is not reasonable to infer that Defendant's "adjusted" EBITDA is indicative of the I/C Department's

---

[13] It is unclear from the filing whether the investor presentation is the same presentation from which Plaintiff claims he saw the EBITDA figures.

"adjusted" EBITDA, let alone infer that because the former EBITDA was "rising," the latter EBITDA was above 15 percent.

The Court therefore finds that Plaintiff's evidence fails to create a genuine dispute that the I/C Department reached 15% EBITDA during 2019. While there may be *some* dispute between the parties as to establishment of this fact, that does not mean that there remains a *genuine* dispute. Indeed, Defendant, by pointing to specific parts of the record, carried its initial burden to demonstrate (preliminarily) that there is no genuine dispute that the I/C Department did not reach the necessary 15% EBITDA threshold, thus putting the onus on Plaintiff to come forward with evidence showing that actually there is a genuine dispute as to this fact. Plaintiff's evidence does not demonstrate a genuine dispute as to this fact; it neither directly demonstrates that the I/C Department's EBITDA reached or rose above 15% in 2019, nor provides a reasonable basis from which to infer that the threshold was met. Therefore, the Court finds that there is no genuine dispute of material fact that the I/C Department's EBITDA reached or rose above 15% during 2019, as required as to make Plaintiff eligible in 2019 for the bonus set forth in the Letter.

## CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment at Doc. No. 25 is GRANTED. This is the final order in the case.

All relief being denied, the Clerk of the Court SHALL enter final judgment. *See* Fed. R. Civ. P. 58(b)(1)(C).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE